Gaston, Judge,
after stating the case, proceeded as follows: We understand the general rule of law to be that where a parnership is formed, each partner is the accredited agent'of the rest — whether they be active, nominal or dormant; and has authority as such, to bind them either 'by simple contracts respecting the business of the firm, or by. negotiable instruments circulated in its behalf to any person dealing bona fide. But it is also the law, that one partner cann.pt bind his co-partners by deed, unless he have express authority deed for that purpose. The bond therefore to Summers, was not in law the bond of both the Woodburns: and upon it, Summers could enforce payment only from Watson Wood-burn. In Equity, however, we apprehend that if it were shewn that the contract for the loan was made in behalf of both the partners, and that the security was by the contract intended to be one binding both the partners, but through mistake, had been so executed as to bind one only, Summers might have had relief against both. As the bond however was in law, the obligation of the partner only who executed it, if nothing else appeared in this case then that executed it as surety, the only inference that could be fully drawn therefrom would be, that he was the surety the principal in the bond.
The con-tween surety— though it. Sed from rity given ¡tot — is not evnienced inn is a col-tract — oím a-which may there-shewnby teift sat «factory n '
tw^parí-ners pm-ostensibiy nresWpPart" concern, ^ for himself; monitor thefim, hut misan-ply it, the bound!
J3ut it is to be recollected, thatthe contract between the prin-c'Pa^an(l surety — though it may be inferredfrom the natüre of the security given to the creditor — is not contained therein, nor evidenced thereby; but is a collateral contract — usually a parol one, which may therefore be shewn by any competent an^ satisfactory evidence. For instance, it could not be denied but that if the plaintiff had, at the request of both the * . . Woodburns, borrowed money in his own name and on his s°fo responsibility, he could have regarded them as his principals, although neither of them was bound to.the lender. And we understand that in this case, it is not denied by the de-counsel, that if the money had been borrowed for, an'd received by, both the Woodburns, the plaintiff — notwithstanding the insufficiency of the bond to bind the Woodburns to Summers — could bold them both as his principals. His h&ving been entered into at their request, they would be bound to indemnify him from loss thereby sustained. The question then seems narrowed to this — whether a responsibility incurred upon a request made by one profess-e¿]y behalf of himself and partners, in relation to their common bnsiness-^but in truth for his individual benefit, is? law, incurred at the request of both. We think it is. If one tw0 Partners purchase goods ostensibly for the partnership concern, but in truth for himself, the firm is bound by bis act — he is the agent of the firm in relation to its business; third persons contracting with him as that agent, contract with the firm — so if he borrow money for the firm, but misapply it, the firm is bound. When credit is advanced at the request °f such agent, in behalf of the alleged business of the co-partnership, it would seem that the contract therefor is as much made with the concern as when goods are purchased or money lent. It is also insisted that there was no evidence in the case justifying the instruction complained of. The evidence is certainly not very full or definite, We, however, have not the right to set aside a verdict because it is not upheld by the weight of testimony, and we , ., - cannot say there was no evidence'. I he testimony oí Lud-wick Summers would seem to shejv, that Watson Woodburn alleged that his negotiation was for the firm; and we think that the jury was well warranted in understanding him to *511 represent that the partnership had been then formed, although the business under it was not to commence until his , , , „ , . brother’s return. The execution of the note m the name of Watson Woodburn & Co., after this representation, was still holding out the profession that he was negotiating not for himself only, but for himself and a partner. And this view of the case may have been strengthened by the remarks of the defendant, which we understand to have been made after he had resolved to contest his liability to Summers — “that the bond had not been signed as he thought, or as the witness told him it was, that he had received the money, but that it was Watson’s part of the stock.” It is possible, indeed, that the jury might have regarded the latter part of this observation as an excuse for refusing to pay a partnership debt, after he had ascertained that he could set up a legal objection to the note.
As we do not see any error of law in the record, we cannot reverse the judgment* Let it be affirmed.
Pee Curiam. Judgment affirmed.